UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

STANLEY TAYLOR,

       Plaintiff,

  -v-                                    No. 17 CV 1424-LTS-SDA

CITY OF NEW YORK (DEPARTMENT OF
SANITATION), NANCY A. REILLY,

       Defendants.

-------------------------------------------------------x

## MEMORANDUM OPINION AND ORDER

        In this action, Plaintiff Stanley Taylor asserts claims for violations of 42 U.S.C. § 1981 ("Section 1981"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., ("Title VII"), and the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 621 et seq., ("ADEA"), that allegedly occurred from August 2014, through September 2015. (Docket Entry No. 25.) The City of New York Department of Sanitation ("DSNY") and Nancy Reilly ("Reilly") (together, "Defendants") have moved to dismiss Plaintiff's Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction and/or 12(b)(6) for failure to state a claim upon which relief can be granted. (Docket Entry No. 26.) The Court has jurisdiction of Plaintiffs' claims pursuant to 28 U.S.C. § 1331.

        The Court has reviewed thoroughly all of the parties' submissions and arguments.[1] For the following reasons, the motion to dismiss the Amended Complaint is granted in part and denied in part.

---

[1] Plaintiff has filed a Second Amended Complaint raising additional claims under N.Y. Exec. Law §§ 290 et seq., and N.Y. City Admin. Code §§ 8-101 et seq. (Docket Entry

BACKGROUND

The following allegations are taken from the Amended Complaint ("AC," Docket Entry No. 25) and are presumed true for the purposes of this motion.

In August 2014, Plaintiff Stanley Taylor was selected to begin the hiring process at DSNY for the position of sanitation worker, a job for which he had passed an exam in 2007. (AC, FACTS, at ¶¶ 1-3, 6.) He attended two medical screenings, in August 2014 and June 2015. (Id. at ¶¶ 7, 12.) At each screening, he was asked, "Why do you want this job at your age?" and, "Aren't you too old?" (Id. at ¶¶ 7, 13.) He was denied for medical reasons after his first screening but was cleared to work in June 2015. (Id. at ¶¶ 8, 14.)

Mr. Taylor continued the hiring process, passing the CDL road test and attending an orientation session. (Id. at ¶¶ 18, 20.) At the orientation session, he was pulled out to complete paperwork verifying his military service, which he did, and was told to report the next week for identification pictures. (Id. at ¶¶ 20-23). When Mr. Taylor arrived to take his pictures on Sept. 29, 2015, he learned that the other applicants at orientation had received a password to access online paperwork (the "PDF") during the time he had spent verifying his military service. (Id. at ¶¶ 24, 27.) He and two other applicants, who were white men, told a female Human Resources worker that they had not completed the PDF. (Id. at ¶ 25.) The worker told Mr. Taylor to wait for the Director but, while he waited, the two white men were called to take their pictures along with the other applicants. (Id.)

---

No. 36.) The Court construes that filing as a motion for leave to amend the Amended Complaint pursuant to Federal Rule of Civil Procedure 15(a)(2). See Triestman v. Federal Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006) (recognizing pro se litigants must be accorded "special solicitude.") This Memorandum Opinion and Order relates only to the Amended Complaint and does not address the additional claims raised in Plaintiff's motion for leave to amend. The Court will separately set a briefing schedule for that motion.

When Human Resources Director Nancy Reilly arrived at around 11 a.m., Mr. Taylor told her that he had not completed the PDF because he did not have the password and asked for help and the use of a computer. (Id. at ¶¶ 27-28.) Reilly became angry and told him, "We don't need people like you," that he had one hour to complete the PDF at the public library, and that, if he did not complete it in time, she would give his job to someone else. (Id. at ¶ 29.) As she walked away, Mr. Taylor overheard her say, "Black people [are] not dependable." (Id. at ¶ 30.) Without the password, Mr. Taylor was unable to access the PDF and, when he returned two hours later, a Human Resources worker told him they had already given his job away. (Id. at ¶¶ 32, 34.)

Mr. Taylor was an employee of the City's Administration for Children's Services at the time and alleges that he did not need to complete the PDF because he was already in the system and merely needed to transfer his pension. (Id. at ¶¶ 32-33.) On July 7, 2016, Mr. Taylor filed a charge of discrimination with the United States Equal Employment Opportunity Commission ("EEOC"). (Id., Intake Questionnaire, at 4.)

## DISCUSSION

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A proper complaint cannot simply recite legal conclusions or bare elements of a cause of action; there must be factual content plead that "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Under the Rule 12(b)(6) standard, the court accepts as true the nonconclusory factual allegations in the complaint and draws all reasonable inferences in the nonmoving party's favor. Roth v. Jennings, 489 F.3d 499, 501 (2d Cir. 2007).

Timeliness of Plaintiff's ADEA and Title VII Claims

Defendants argue that Plaintiff's claims under the ADEA and Title VII are untimely to the extent they are based on events that allegedly occurred prior to Sept. 11, 2015. (Docket Entry No. 27, at 6-7.)[2] The ADEA requires that before bringing suit in a state, such as New York, that has its own age discrimination remedial agency individuals file a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the alleged unlawful practice. Hodge v. New York College of Podiatric Medicine, 157 F.3d 164, 166 (2d Cir. 1998). Plaintiff's age discrimination claims arise from the two medical screenings that occurred in August 2014 and June 2015, during which doctors allegedly asked Plaintiff why he wanted a job with DSNY at his age. (AC, FACTS, at ¶¶ 7, 12-13.) Plaintiff filed his charge of discrimination with the EEOC on July 7, 2016, more than a year after the two screenings. (AC, Intake Questionnaire, at 4.) Because Plaintiff has not alleged any other event from which age discrimination could plausibly be inferred, the facts alleged in the amended complaint reveal that Plaintiff's age discrimination claim is time-barred.

Title VII contains a similar exhaustion provision, requiring "individuals aggrieved by acts of discrimination to file a charge with the [EEOC] within 300 days after the alleged unlawful employment practice occurred." Rivas v. New York State Lottery, 745 F. App'x 192, 192-93 (2d Cir. 2018) (internal citations omitted). Plaintiff's race discrimination claims under

---

[2] The Court analyzes Defendants' timeliness arguments according to Federal Rule of Civil Procedure 12(b)(6) because the Second Circuit has "repeatedly held that 'the failure to exhaust administrative remedies is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement.'" Hardaway v. Hartford Public Works Dep't, 879 F.3d 486, 489 (2d Cir. 2018) (citing Francis v. City of New York, 235 F.3d 763, 768 (2d Cir. 2000)); O'Hara v. Memorial Sloan-Kettering Cancer Center, 27 F. App'x 69, 70 (2d Cir. 2001) (applying Francis to a retaliation claim under the ADEA).

Title VII arise from the events of Sept. 29, 2015: Nancy Reilly's alleged derogatory, race-based comments which preceded her decision not to hire him, and the hiring of two similarly situated white men. (AC, FACTS, at ¶¶ 25, 29-30.) Because Plaintiff filed his EEOC charge on July 7, 2016 – within 300 days of Sept. 29, 2015 – his Title VII claim is timely.

Plaintiff's ADEA and Title VII Retaliation Claims

Defendants argue that the amended complaint fails to state a clam of retaliation under the ADEA or Title VII. A plaintiff claiming retaliation under either statute must ultimately prove: "(1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) adverse employment action; and (4) a causal connection between plaintiff's protected activity and the adverse employment action." Gordon v. New York City Bd. of Educ., 232 F.3d 111, 113 (2d Cir. 2000); see also Schnabel v. Abramson, 232 F.3d 83, 87 (2d Cir. 2000) (ADEA claims are analyzed "under the same framework as claims brought pursuant to Title VII.") (internal citations omitted). Plaintiff's amended complaint pleads facts supporting two of these four elements, but demonstrates on its face that Plaintiff cannot establish the fourth element.

Plaintiff has alleged he participated in a protected activity by filing a charge of discrimination with the EEOC. (AC, Intake Questionnaire); see 42 U.S.C.S. § 2000e-3 (LexisNexis 2019) ("It shall be an unlawful employment practice for an employer to discriminate against any of his employees… because he has made a charge"). Plaintiff has also alleged an adverse employment action: DSNY's decision not to hire him. (AC, FACTS, at ¶ 34.) However, because DSNY's decision not to hire Plaintiff preceded his filing of the charge of discrimination with the EEOC, no relevant causal connection between the two events is possible. Accordingly,

the complaint fails to state a claim of retaliation upon which relief can be granted under either the ADEA or Title VII.

### Plaintiff's Title VII Race Discrimination Claim

Title VII provides, in relevant part, that "[i]t shall be an unlawful employment practice for an employer… to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color,… or national origin." 42 U.S.C.S. § 2000e-2(a) (LexisNexis 2012). "[A]bsent direct evidence of discrimination, what must be plausibly supported by facts alleged in the complaint is that the plaintiff is a member of a protected class, was qualified, suffered an adverse employment action, and has at least minimal support for the proposition that the employer was motivated by discriminatory intent." Littlejohn v. City of New York, 795 F.3d 297, 311 (2d Cir. 2015). Upon plausibly pleading such facts, "a presumption of discriminatory intent arises in [Plaintiff's] favor." Id. Plaintiff's Amended Complaint addresses each of these elements and, as shown below, is sufficient to plead plausibly his claim of race discrimination.

Plaintiff has alleged that he is African American, that he completed the preconditions for employment,³ including the sanitation exam, medical screening, CDL license test, orientation session, and transfer of pension, and that he was not hired. (AC, FACTS, at ¶¶

---

³ Included with the complaint is a copy of an email exchange wherein a DSNY employee noted the PDF "is required of all incoming new hires." (AC, Ex. 22.) Because Plaintiff has claimed that DSNY attempted to cover up its discrimination by lying about the circumstances of his non-hiring in these emails (AC, FACTS, at ¶ 40), the Court views this exhibit as an offer of proof of the ongoing attempt to conceal discrimination and does not assume the content of the emails to be true for the purposes of deciding the motion to dismiss.

1-3, 14, 18, 23, 33.)  These allegations suffice to address the first three elements required to raise the presumption of discriminatory intent.

Plaintiff has, furthermore, alleged two interactions with DSNY personnel which provide "at least minimal support" for an inference of discriminatory intent.  First, Plaintiff has alleged that two white men "who had not completed the PDF" were hired the same day that he was turned away (AC, FACTS, at ¶ 25), that they were similarly situated to him,[4] and that he was told that he could not be hired without completing the same PDF.  (Id. at ¶¶ 25, 29.)  Second, Plaintiff has alleged that Reilly was motivated by discriminatory intent, indicated by her statements that "we don't need people like you" and "Black people are not dependable," made as she instructed him to complete the PDF within an hour.  (Id. at ¶¶ 29-30.)  He also alleges that Reilly threatened to give his job away unless he completed the PDF within the hour, did not give him the necessary password, and gave away his spot shortly after their conversation.  (Id. at ¶ 29, 34; Docket Entry 35, at 6.)  In these allegations, Plaintiff has proffered facts that at least minimally support an inference of discriminatory motivation, and thus has pleaded plausibly his race discrimination claim.

### Plaintiff's Section 1981 Race Discrimination Claim

Plaintiff has alleged a violation of Section 1981 by DSNY and by Reilly, in both her official and individual capacities.[5]  Section 1981 provides, in pertinent part, that "[a]ll

---

[4] Because Plaintiff has alleged that the "Human Resources worker called everyone… including the two men (white) who had not completed the PDF" to take their identification photos, the Court assumes for the purposes of the motion to dismiss that the two men did not complete the PDF before continuing the hiring process.  (AC, FACTS, at ¶ 25.)

[5] Because Mr. Taylor is pro se, his complaint is construed liberally to raise the strongest possible claim presented by the facts, including claims against Reilly in both her individual and official capacities.  See Triestman, 470 F.3d at 475 (pro se litigants are accorded "special solicitude.").

persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts… and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens….” 42 U.S.C.S. § 1981(a) (LexisNexis 2019).  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts...." 42 U.S.C.S. § 1981(b) (LexisNexis 2019).  Section 1981's protections apply to employment relationships. See Patterson v. Cty. of Oneida, 375 F.3d 206, 224-25 (2d Cir. 2004).  Claims against defendants in their official capacity are construed as an action against the governmental entity itself.  Kentucky v. Graham, 473 U.S. 159, 165-66 (1985) (citing Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 690 n.55 (1978)).

Claims that a government entity has violated Section 1981 must be brought pursuant to Section 1983, which requires a demonstration that the violation occurred as a result of the government entity's official policy or custom.  See Jett v. Dallas Independent School Dist., 491 U.S. 701, 735-36 (1989) (citing Monell, 436 U.S. 658).  "Official municipal policy includes… practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011); City of Oklahoma City v. Tuttle, 471 U.S. 808, 824 (1985) ("where the policy relied upon is not itself unconstitutional, considerably more proof than the single incident will be necessary").  "[I]solated acts" by non-policymaking municipal employees are "not sufficient to demonstrate a municipal custom [or] policy." Jones v. Town of E. Haven, 691 F.3d 72, 85 (2d Cir. 2012) (holding that "two instances, or at the most three, over a period of several years" is insufficient).  "The mere assertion ... that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d

Cir.1993), abrogated on other grounds by Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit, 507 U.S. 163 (1993).

Mr. Taylor has alleged two facts that are arguably indicative of discriminatory policies – Reilly's decision not to hire him because "Black people aren't dependable," and the hiring of two similarly situated white men for the position that Plaintiff was denied (AC, FACTS, at ¶¶ 25, 29-30) – and argues that the race-based and disparaging comments of Reilly were "a direct assertion of Sanitation and Ms. Reilly's policy." (Docket Entry No. 35, at 6.) These incidents standing alone are not facially indicative of a widespread practice or custom of denying relevant employment opportunities to African Americans. While these allegations are more than a "mere assertion" that the municipal defendant has a policy, they do not support an inference of a practice that is "so persistent and widespread as to practically have the force of law." Connick, 563 U.S. at 61. Plaintiff has not alleged any similar incidents of discrimination against other minority candidates for his position that could support such an inference of a "persistent and widespread" practice of discrimination. See Ruiz v. City of New York, No. 14-CIV-5231 (VEC), 2015 WL 5146629, at *12 (S.D.N.Y. Sept. 2, 2015) (dismissing Monell claim where plaintiffs merely alleged misconduct was "repetitive, continuous and systematic").

A municipality may, however, be liable for even a single unconstitutional act of an official who has final policy-making authority. See Pembaur v. City of Cincinnati, 475 U.S. 469, 481 (1986) (municipalities are responsible where "action is directed by those who establish governmental policy"). The Second Circuit has held that a "single unlawful discharge, if ordered by a person 'whose edicts or acts may fairly be said to represent official policy,' may support an action against the municipal corporation." Rookard v. Health and Hosps. Corp., 710 F.2d 41, 45 (2d Cir. 1983) (citing Monell, 436 U.S. at 694). The official need not be a municipal

policymaker for all purposes; the official must merely be "responsible under state law for making policy *in that area* of the [municipality's] business." Jeffes v. Barnes, 208 F.3d 49, 57 (2d Cir. 2000) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 123 (1988)). If an official's decision was, "at the time [it was] made, for practical or legal reasons… the municipality's final decision," then they are a final policymaker. Rookard, 710 F.2d at 45. Other factors which are significant to determining whether an individual's authority rises to a policymaking level include the individual's scope of employment and their role within the organization. Id. "An official's title, though not dispositive of his authority to make policy… is relevant for the inferences fairly to be drawn therefrom." Id. (internal citations omitted).

Plaintiff has pleaded sufficient facts to support a fair inference at the pleading stage that Reilly's hiring decisions were "for practical or legal reasons… the municipality's final decision." Rookard, 710 F.2d at 45. Plaintiff has alleged that Reilly was the Director of Human Resources for DSNY, that he was told to wait for her when he needed help with the PDF, that she told him she could hire another candidate if he did not meet her requirements, and that she did in fact hire another candidate that same afternoon. (AC, FACTS, at ¶¶ 25, 27, 29, 41; Docket Entry No. 35, at 6.) The Court can infer from Reilly's title and her assertion of authority to hire someone other than Plaintiff that her decision was not subject to review by a superior official within DSNY as a matter of practice. See Westchester Medical Center Health Network, No. 18-CIV-1335 (KMK), 2019 WL 1430014, at *9 (S.D.N.Y. Mar. 29, 2019) (denying a motion to dismiss where "Plaintiff alleges that she was told [the defendant] made the decision to terminate Plaintiff's employment, suggesting he has final authority over hiring and firing decisions."); Tekula v. Bayport-Blue Point School Dist., 295 F. Supp. 2d 224, 234 (E.D.N.Y. 2003) (denying a motion to dismiss where Plaintiff alleged that the Defendant was the school district

superintendent and that he personally signed the letter terminating Plaintiff's employment). Because Plaintiff has plausibly alleged that Reilly possessed final authority to not hire him, the Amended Complaint supports the requisite inference that Reilly was a final policy-maker whose decision could establish a governmental policy and thereby subject the municipality to liability under Monell.

For the reasons discussed in connection with the Title VII claim of race discrimination, Plaintiff's allegations regarding Reilly's statements and conduct are sufficient to state a cause of action against her in her individual capacity.

<u>CONCLUSION</u>

For the foregoing reasons, the motion to dismiss is denied as to Plaintiff's Title VII claim of race discrimination and his Section 1981 race discrimination claims against DSNY and against Reilly in her individual and official capacities, but the motion is granted as to Plaintiff's Title VII retaliation claim and his claims under the ADEA. Plaintiff is granted permission to file a motion **by Friday, September 13, 2019**, for leave to amend the Amended Complaint. Any such motion must comply with the applicable federal, local, and chambers rules, and must be accompanied by a blacklined version of the proposed Second Amended Complaint identifying all changes from the Amended Complaint. Any proposed Second Amended Complaint will replace the Amended Complaint entirely and thus must include all of the factual allegations and legal claims that Plaintiff wishes to pursue.

The Court also certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore <u>in forma pauperis</u> status is denied for purpose of an appeal. <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438, 444 (1962).

Docket Entry No. 26 is resolved.

SO ORDERED.

Dated: New York, New York
August 20, 2019

   /s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
United States District Judge

Copy Mailed To:    Stanley Taylor
81 North Portland Ave. Apt. 12H
Brooklyn, NY 11205