UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

STANLEY TAYLOR,

                         Plaintiff,

     -v-

THE CITY OF NEW YORK, NEW YORK
CITY DEPARTMENT OF SANITATION,
AND NANCY A. REILLY,

                         Defendants.

---

> USDC SDNY
> DOCUMENT
> ELECTRONICALLY FILED
> DOC #:_____
> DATE FILED:___3/31/2023___

17-cv-1424 (MKV)

OPINION AND ORDER
DENYING IN PART AND
GRANTING IN PART
MOTION FOR
SUMMARY JUDGMENT

MARY KAY VYSKOCIL, District Judge:

    Plaintiff Stanley Taylor, an African American man, brings this action alleging that he was denied a position with Defendant the New York City Department of Sanitation ("DSNY") because of his race. Taylor maintains that Defendant Nancy A. Reilly, then Director of Human Resources for DSNY, said to him, "we don't need people like you" and "black people aren't dependable" before eliminating him from consideration. Defendants deny that Reilly made those statements. They also offer a legitimate, non-discriminatory reason for denying Taylor a position: he failed to complete a required form, the Comprehensive Personnel Document ("CPD"). However, Taylor raises a genuine dispute as to whether he was required to fill out the CPD because he was already employed at another City agency.

    Defendants are not entitled to summary judgment on Taylor's claim of race discrimination because Taylor clearly establishes a *prima facie* case of race discrimination and there is a genuine dispute of fact whether Defendants had a legitimate, non-discriminatory reason for refusing to hire Taylor. However, since there is no evidence of an official policy or custom of race discrimination, and no evidence that Reilly was a policy-maker, Defendants are entitled to summary judgment on

Taylor's Section 1981 claim.  As such, and for all of the reasons set forth below, Defendants' motion is DENIED in part and GRANTED in part.

## I.      BACKGROUND[1]

### A. Taylor Completes the Requirements To Become Eligible for a Position.

Plaintiff Stanley Taylor took the Civil Service Examination for a position as a sanitation worker with DSNY in 2007.  Def. 56.1 ¶ 32; Pl. 56.1 ¶ 32.  Taylor passed the 2007 Exam and, years later, his Civil Service Number was finally selected in 2014.  Def. 56.1 ¶¶ 33, 34; Pl. 56.1 ¶¶ 33, 34.  However, shortly thereafter, Taylor was medically disqualified from the sanitation worker position.  Def. 56.1 ¶ 35; Pl. 56.1 ¶ 35.  When his number was reached again in 2015, Taylor underwent another medical exam, and he was found medically qualified for the position.  Def. 56.1 ¶¶ 36, 37; Pl. 56.1 ¶¶ 36, 37.  Taylor then took part in DSNY's commercial driver's license training program, which made him eligible for DSNY's 2015 training class.  Def. 56.1 ¶¶ 38–41; Pl. 56.1 ¶¶ 38–41.  The parties agree that "[c]andidates for the position of Sanitation Worker are appointed to that position, and become employed, by DSNY on the first day of training."  Def. 56.1 ¶ 41; see Pl. 56.1 ¶ 41.  In other words, having gone through a long, multi-step process, Taylor was eligible to be hired by DSNY.

### B. The CPD

There is no dispute that, when Taylor attended a DSNY orientation in late September 2015, a member of the DSNY staff told him to complete a Comprehensive Personnel Document ("CPD"), which he would receive via email in PDF format [ECF Nos. 110-9; 110-11; 110-15].  Def. 56.1 ¶¶ 42, 43; Pl. 56.1 ¶¶ 42, 43.  Taylor testified at a deposition that he tried to complete

---

[1] The facts are taken from the evidence cited in the parties' Local Civil Rule 56.1 statements [ECF Nos. 70, 103-1 ("Def. 56.1"), 113 ("Pl. 56.1")], the declarations submitted in connection with the motion for summary judgment [ECF Nos. 103-2, 110], and the exhibits attached thereto [ECF Nos. 103-4–26, 110-121].  See Fed. R. Civ. P. 56(c)(1).

the electronic CPD after the orientation, but he was unable to do so [ECF No. 103-22 ("Taylor Depo.") at 39:15–20; 90:12–25; 91:1–15]. Def. 56.1 ¶ 44; Pl. 56.1 ¶ 44. The CPD form that Defendants submit in support of their motion states at the top of the first page: "If you are a current city employee or a prior city employee separated from NYC less than one year ago and there is a fully completed Personal History Questionnaire (PHQ) or Comprehensive Personnel Document in (CPD) in your Personnel Folder (TPF), this form may not be required. Instead complete an Update Personnel Document (UPD)" [ECF No. 76-12; 103-15 ("Def. CPD") at 1].[2]

When Taylor reported for the DSNY orientation, he was "already working for the City of New York" at another City agency. Taylor Depo. at 40:25. There is no dispute that Taylor completed and signed a UPD [ECF No. 110-15 ("Taylor UPD"); ECF No. 103-26 ("Reilly Depo.") at 56:6–58:11]. The parties agree that at least some "candidates who are current or former employees of the City" may be required to complete a UPD. Def. 56.1 ¶ 24; Pl. 56.1 ¶ 24. In seeking summary judgment, Defendants insist that "all candidates for appointment to the position of Sanitation Worker were required to complete the CPD electronically," and the "UPD is completed in addition to the CPD," and, at minimum, candidates who "previously completed a CPD in connection with other City employment are still required to *access and review* the CPD before they can be appointed to a new position." Def. 56.1 ¶¶ 22, 25, 26 (emphasis added).

Taylor disputes that "existing New York City employees" were required to complete a new CPD. *See* Pl. 56.1 ¶¶ 20, 22. He disputes any "implication that [there] was no electronic CPD for

---

[2] Taylor asserts that the version of the CPD form Defendants submit is not the version of the form that was in use when he was asked to complete it in 2015. Pl. 56.1 ¶ 20. Taylor submits the incomplete CPD form that he printed out in his efforts to comply with DSNY staff instructions [ECF No. 110-13 ("Taylor Incomplete CPD")]. The language at the top of the first page about who is required to complete the CPD is slightly different from the language in the CPD form Defendants submit. Taylor's version states: "All applicants for employment with *the City of New York*, including *former* employees with a break in service of more than one year" must complete the CPD. Taylor Incomplete CPD at 1. Taylor's version of the CPD implies what Defendants' version explicitly states: "current city employee[s] . . . may not be required" to complete the CPD. Def. CPD at 1.

Mr. Taylor in the City's database." Pl. 56.1 ¶ 23. And, as explained below, Taylor offers evidence

that he did, at minimum, access and attempt to update his CPD [ECF No. 110-13].

### C. Taylor Meets with Reilly at the Office of DSNY Human Resources.

It is undisputed that, several days after the orientation, Taylor went to the Office of DSNY

Human Resources without having completed the new CPD he had received via email. Def. 56.1

¶ 45; Pl. 56.1 ¶ 45. Taylor contends that he encountered two other candidates at the Human

Resources Office who also had not completed the CPD. Def. 56.1 ¶ 48, Pl. 56.1 ¶ 48. Taylor

asserts that those two individuals were white. Def. 56.1 ¶ 48, Pl. 56.1 ¶ 48. Taylor does not offer

any other information about these people, including whether they ultimately completed their forms

or were employed by DSNY. *See* Def. 56.1 ¶¶ 49, 50; Pl. 56.1 ¶¶ 49, 50.

Taylor then spoke to Reilly about the CPD. Def. 56.1 ¶ 54; Pl. 56.1 ¶ 54. Taylor explained

that he had tried to complete the new CPD but had not been able to do so [ECF No. 103-16 ("Reilly

Decl.") ¶¶ 21, 22]. *See* Def. 56.1 ¶¶ 45, 46, 47, 54; Pl. 56.1 ¶¶ 45, 46, 47, 54. Reilly told Taylor

to leave the office and complete the CPD within one hour, by 4:00 p.m. that day. Def. 56.1 ¶ 57;

Pl. 56.1 ¶ 57; Reilly Decl. ¶¶ 22, 23.

Taylor has testified that, during this conversation, Reilly said, "we don't need people like

you" and "black people aren't dependable." Taylor Depo. at 63:23, 65:17–18; *see* Def. 56.1 ¶ 55;

Pl. 56.1 ¶ 55. Reilly denies that she made either of those statements. Reilly Decl. ¶ 28.

### D. Taylor Again Tries To Complete the New CPD, but Reilly Refuses To Hire Him.

Taylor maintains that, after his conversation with Reilly, he was "able to access" the new

CPD; however, because he was already a City employee, the computer system did not allow him

to add anything to the document. Taylor Depo. at 67:19–68:10; *see* Def. 56.1 ¶ 58; Pl. 56.1 ¶ 58.

According to Taylor, he "made a copy" of the incomplete new CPD, and called DSNY Office to

say: "I'm coming; please don't give away my position."  Taylor Depo. at 68:10–12; *see* Def. 56.1 ¶ 59; Pl. 56.1 ¶ 59; Taylor Incomplete CPD.  However, Taylor was informed the DSNY "gave up [his] position to somebody else."  Taylor Depo. at 68:24–25.

There is no dispute that Reilly instructed her staff to report Taylor's employment status as "Candidate Failed to Report" and to call the next candidate on the Civil Service List to take Taylor's place [ECF No. 110-19].  Def. 56.1 ¶¶ 51, 61, 62; Pl. 56.1 ¶¶ 51, 61, 62; *see* Reilly Depo. at 74–76.  According to Reilly, she refused to hire Taylor because he had not completed the CPD by the 4:00 p.m. deadline she had imposed.  Reilly Decl. ¶¶ 23–26.  Taylor maintains that she refused to hire him because of his race.

### E.  Procedural History

Proceeding *pro se*, Taylor commenced this action by filing a complaint, which he later amended [ECF Nos, 2, 25 ("AC")].  The Amended Complaint asserts claims for: (1) discrimination based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"); (2) race discrimination in violation of 42 U.S.C. § 1981 ("Section 1981"); (3) age discrimination; and (4) retaliation.  The case was assigned to Chief Judge (then-Judge) Swain.

Defendants moved to dismiss Taylor's case, and Taylor filed a *pro se* opposition brief [ECF Nos. 26, 37].  Chief Judge Swain denied Defendants' motion to dismiss Taylor's claims for race discrimination in violation of Title VII and Section 1981 [ECF No. 42 ("Op.")].  *Taylor v. City of New York (Dep't of Sanitation)*, No. 17 CV 1424-LTS-SDA, 2019 WL 3936980 4–6 (S.D.N.Y. Aug. 20, 2019).  With respect to the Title VII claim, Chief Judge Swain explained that Taylor stated a claim for race discrimination, citing the allegations that Reilly had told Taylor, "we don't need people like you" and "black people aren't dependable" while instructing him to complete the new CPD within one hour.  Op. at 7.  With respect to the Section 1981 claim, Chief Judge Swain

explained that, although Taylor did not allege any official policy or custom of race discrimination, she liberally construed Taylor's pleading to allege that "Reilly was a final policy-maker" whose single, allegedly discriminatory decision "could establish a governmental policy and thereby subject the municipality to liability under *Monell*." Op. at 11. Chief Judge Swain twice noted the "special solicitude" afforded to *pro se* litigants. Op. at 2 n.1, 7 n.5.

The case was later reassigned to me. The parties completed discovery, and Defendants filed a motion for summary judgment [ECF No. 76. 77]. However, *pro bono* counsel filed a notice of appearance on Taylor's behalf and moved to reopen discovery [ECF No. 81]. The Court denied without prejudice Defendants' motion for summary judgment and granted Taylor's request to take additional discovery with the benefit of counsel [ECF No. 85].

After the parties completed the additional discovery, Defendants again moved for summary judgment on both of Taylor's remaining claims [ECF. No. 103, 103-3 ("Def. Mem.")]. Taylor, through counsel, opposed Defendants' motion for summary judgment [ECF No. 114 ("Pl. Opp.")]. Defendants filed a reply [ECF No. 115 ("Def. Reply")].

## II.   LEGAL STANDARDS

To succeed on their motion for summary judgment, Defendants must show "that there is no genuine dispute as to any material fact and that [Defendants are] entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute exists 'where the evidence is such that a reasonable jury could decide in the nonmovant's favor.'" *Walsh v. New York City Hous. Auth.*, 828 F.3d 70, 74 (2d Cir. 2016) (quoting *Delaney v. Bank of America Corp.*, 766 F.3d 163, 167 (2d Cir. 2014)). In deciding a motion for summary judgment, the Court "must 'construe the facts in the light most favorable to the non-moving party and must resolve all ambiguities and draw all reasonable inferences against the movant.'" *Walsh*, 828 F.3d at 74 (quoting *Aulicino v. N.Y.C.*

*Dep't of Homeless Servs.*, 580 F.3d 73, 79 (2d Cir. 2009)).

## III.    DISCUSSION

In seeking a position with DSNY, Taylor passed the Civil Service Exam, waited years, completed medical exams, and obtained a commercial driver's license, all at significant personal expense.  Def. 56.1 ¶¶ 32, 33, 37–40; Pl. 56.1 ¶¶ 32, 33, 37–40; *see* AC at 2, 4, 7.  According to Defendants, the only thing that stood between Taylor and his long-awaited goal was a form.  *See* Def. 56.1 ¶ 40; Reilly Depo. at 20, 48.  Forms are pesky things.  "Anyone who has applied for a passport, filed for Social Security benefits, or sought a license understands the government's affinity for forms.  Make a mistake or skip a page?  Go back and try again, sometimes with a penalty for the trouble."  *Niz-Chavez v. Garland*, 141 S.Ct. 1474, 1478 (2021).  Taylor was told to complete a new CPD, even though he was already a City employee with a CPD on file.  According to Taylor, his penalty for struggling with the new CPD was that Reilly told him, "we don't need people like you" and "black people aren't dependable," and she gave him an unrealistically short deadline to leave the DSNY office and return with the completed form before giving away his position.  Taylor Depo. at 63:23, 65:17–18.

As explained below, Taylor clearly establishes a *prima facie* case of race discrimination. Defendants respond with one single, solitary argument that Reilly had a legitimate, non-discriminatory reason for refusing to hire Taylor: he failed to complete a form that *all* candidates were required to complete.[3]  But Defendants submit in support of this argument a version of the CPD that plainly states the "form may not be required" for "a current city employee."  Def. CPD

---

[3] Perhaps Reilly *believed*, as she has testified, that Taylor was required to complete a new CPD, even though he was already employed by the City.  But Defendants' only argument is that Taylor was, in fact, required to complete the CPD.  Given that Taylor establishes a *prima facie* case of race discrimination, Defendants have the burden to establish the non-discriminatory reason for refusing to hire him.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Vivenzio v. City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).

at 1.  Because Defendants' own evidence makes clear there is a genuine dispute about Defendants'

proffered nondiscriminatory reason for refusing to hire Taylor, Defendants are not entitled to

summary judgment on Taylor's Title VII race discrimination claim.

However, as explained below, Taylor's Section 1981 claim fails.  Defendants on that issue

have the law and the evidence on their side: Taylor cannot rest his Section 1981 claim on a theory

of *respondeat superior*, and there is no evidence that Reilly was a policy-maker.  Accordingly,

Defendants are entitled to summary judgment on Taylor's Section 1981.

### A. Taylor Raises a Genuine Dispute as to his Title VII Claim.

Title VII provides that "[i]t shall be an unlawful employment practice" to "fail or refuse to

hire" an individual "because of such individual's race."  42 U.S.C. § 2000e-2(a).  The landmark

decision in *McDonnell Douglas* established the now-familiar tripartite burden-shifting framework

governing Title VII discrimination claims.  *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792,

802 (1973).  First, the plaintiff must "make out a prima facie case of discrimination."  *Vivenzio v.

City of Syracuse*, 611 F.3d 98, 106 (2d Cir. 2010).  Second, if the plaintiff makes the required

showing, "the burden shifts to the [defendant] to come forward with a nondiscriminatory reason

for the decision not to hire the plaintiff."  *Id.*  Then, if the defendant carries that burden, "the

plaintiff 'is given an opportunity to adduce admissible evidence . . . to permit a rational finder of

fact to infer that the employer's proffered reason is pretext for an impermissible motivation."  *Id.*

(quoting *Howley v. Town of Stratford*, 217 F.3d 141, 150 (2d Cir. 2000)).

### 1. *Taylor Makes Out a* Prima Facie *Case of Race Discrimination.*

Taylor clearly makes out a *prima facie* case of race discrimination under Title VII.  To

satisfy this first step in the *McDonnell Douglas* framework, the plaintiff must show: "(1) he is a

member of a protected class, (2) he was qualified for the job for which he applied, (3) he was

denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination." *Vivenzio*, 611 F.3d at 106.  There is no question that Taylor is a member of a protected class, since he is African American.  Def. 56.1 ¶ 2; Pl. 56.1 ¶ 2.  The parties also agree that Taylor was qualified for a position as a sanitation worker.  *See* Def. 56.1 ¶ 40; Pl. 56.1 ¶ 40.  And there is no dispute that Taylor was denied the position.  Def. 56.1 ¶¶ 61, 62; Pl. 56.1 ¶¶ 61, 62; *see* Reilly Depo. at 74–76.

Taylor offers evidence that he was denied a position as a sanitation worker under circumstances that give rise to an inference of invidious discrimination.  In particular, Taylor has testified that Reilly told him, "we don't need people like you" and "black people aren't dependable" and that she gave him an unrealistically short deadline before giving away his position.  Taylor Depo. at 63:23, 65:17–18; Def. 56.1 ¶ 55; Pl. 56.1 ¶ 55.  Taylor's testimony that a decision-maker made an overtly racist statement to him before refusing to hire him is sufficient to meet his burden at the first step of the *McDonnell Douglas* analysis.  *See Tomassi v. Insignia Financial Group, Inc.*, 478 F.3d 111, 115 (2d Cir. 2007); *Danzer v. Norden Systems, Inc.*, 151 F.3d 50, 57 (2d Cir. 1998).

Defendants offer some half-hearted, and wholly unpersuasive, arguments that Taylor fails to make out a *prima facie* case of discrimination.[4]  Of course, Defendants deny that Reilly made the statements in question.  Reilly Decl. ¶¶ 27, 28; Def. Mem. at 13–16.  But Defendants' denials are not sufficient to prevail on summary judgment.  *See Danzer*, 151 F.3d at 57.  On the contrary, that Taylor and Reilly offer competing testimony about whether Reilly made a racist statement

---

[4] Defendants also argue that Taylor's assertions about "two unidentified white individuals" who did not complete the CPD do not support a *prima facie* case of race discrimination.  Def. Mem. at 13; *see* Pl. 56.1 ¶¶ 48, 49, 50.  Defendants are correct.  Taylor offers no information about whether these two individuals ultimately completed their forms or were employed by DSNY.  *See* Pl. 56.1 ¶¶ 48, 49, 50.  Thus, there is no basis to infer that these white candidates were similarly situated to Taylor but were treated more favorably than Taylor.  *See Shumway v. United Parcel Serv., Inc.*, 118 F.3d 60, 64 (2d Cir. 1997).

shows only that there is a genuine dispute of fact for a jury to resolve.  *See Walsh*, 828 F.3d at 74.

A reasonable fact-finder could credit Taylor over Reilly.  *See id.*

Defendants also assert that Taylor fails to make out a *prima facie* case of discrimination

because, Defendants contend, he has not shown a connection between Reilly's alleged racist

statement and her refusal to hire him.  Def. Mem. at 13 ("there is no evidence . . . that connects

these alleged remarks to DSNY's decision not to hire Plaintiff").  This assertion borders on

specious.  Taylor maintains that Reilly said "black people aren't dependable" and "we don't need

people like you," while giving him an unrealistically short deadline to leave the office and return

with the completed the CPD, and then proceeded to eliminate him from consideration for the

position at DSNY.  This sequence of events clearly gives rise to the "inference" that Reilly refused

to hire Taylor because of her allegedly stated invidious belief that "black people aren't

dependable." *Vivenzio*, 611 F.3d at 106; Pl. 56.1 ¶ 55.

Finally, Defendants resort to the argument that Reilly's alleged racist statement was no

more than a "stray remark." *Danzer*, 151 F.3d at 56; Def. Reply at 3.  This argument rings hollow

for the same reasons the others fail.  More importantly, Second Circuit precedent forecloses

dismissing Reilly's alleged racist statement as a stray remark.  *See Henry v. Wyeth*

*Pharmaceuticals, Inc.*, 616 F.3d 134, 149–50 (2d Cir. 2010).  Reilly was the "decisionmaker";

"the remark was made in relation to the employment decision at issue"; the "content of the remark"

was blatantly racist ("black people aren't dependable"); and the remark directly "related to the

decisionmaking process" ("we don't need people like you").  *Id.*  Taylor has made out a *prima*

*facie* case of discrimination.  *See Danzer*, 151 F.3d at 54.

2. *There Is a Genuine Dispute as to Defendants' Nondiscriminatory Justification.*

Because Taylor carried his burden to make out a *prima facie* case of race discrimination,

the "burden shifts" to Defendants to "come forward with a nondiscriminatory reason for the decision not to hire the plaintiff." *Vivenzio*, 611 F.3d at 106. Defendants have come forward with a single nondiscriminatory justification for their decision: Taylor was required to fill out the new CPD, which he failed to do. Def. Mem. at 16; *see* Def. Reply at 4. Defendants are clear on this point: "[T]he record establishes that DSNY had *a* legitimate, non-pretextual business reason for not hiring Plaintiff in the position of Sanitation Worker at DSNY—his failure to complete the CPD." Def. Mem. at 16 (emphasis added).

In support of their asserted non-discriminatory justification for refusing to hire Taylor, Defendants submit an "example" CPD. But Defendants' submission says nothing to support their assertion about the City's requirements. To the contrary, the CPD form that Defendants submit states: "If you are a current city employee or a prior city employee separated from NYC less than one year ago . . . ***this form may not be required***. *Instead, complete an Update Personnel Document* (UPD.)." Def. CPD at 1 (emphases added). Furthermore, the CPD form that Taylor unsuccessfully attempted to complete states that "applicants for employment with the City of New York, including former employees with a break in service of more than one year" must complete the form. Taylor Incomplete CPD at 1. This language suggests that existing City employees, or former employees with a break in service of less than one year, need not complete a new CPD. Taylor was "working for the City of New York" at another City agency and there is no dispute that he completed a UPD. Taylor Depo. at 40:25; Taylor UPD; Reilly Depo. at 56:6–58:11.

Defendants have "both the burden of production with respect to [their] contention that [their] employment decision was based on a legitimate nondiscriminatory reason, and, as the party moving for summary judgment, the burden of showing that there was no genuine issue of material fact to be tried." *Vivenzio*, 611 F.3d at 107. Given that Defendants produced a form that says

Taylor might not have been required to complete the CPD, Defendants have failed to meet their burdens.  There is a genuine dispute of fact as to Defendants' proffered nondiscriminatory reason for refusing to hire Taylor.  *See Vivenzio*, 611 F.3d at 107.

Reilly has testified to her belief that Taylor was required to complete the new CPD, even though he was already a City employee.  *See* Reilly Depo. at 58:14–15; Reilly Decl. ¶ 26.  Perhaps she truly believed that, notwithstanding the language on the form in question.  In resolving a motion for summary judgment, it is not the role of the Court to decide what was in Reilly's mind when she refused to hire Taylor.

Rather, the Court's role is only to decide whether Defendants have shown that there is no genuine dispute as to any material fact and Defendants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a).  Because Taylor has made out a *prima facie* case of discrimination, Defendants must not only come forward with a non-discriminatory reason for the refusal of DSNY to hire Taylor, but also must establish that there is no genuine dispute of fact as to the reason that Defendants proffer.  Defendants insist that Taylor was required to complete the new CPD because "all candidates" for a position as a sanitation worker were required to complete the CPD.  Def. 56.1 ¶¶ 20, 22.  But clearly there is a genuine dispute as that fact.  As such, the Court need not proceed to the final step of the *McDonnell Douglas* analysis.  Defendants are not entitled to summary judgment on Taylor's Title VII claim.

### B.  Taylor Fails To Make Out a *Prima Facie* Case for his § 1981 Claim.

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State . . . to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens . . ." 42 U.S.C. § 1981.  Section 1981 extends to employer-employee relationships.  *See Patterson v. Cnty. of Oneida, N.Y.*, 375

F.3d 206, 224–25 (2d Cir. 2004).  Where, as here, a plaintiff files a complaint against a defendant in her official capacity, the claims are generally construed against the government entity itself. *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985) (citing *Monell v. Dep't of Social Services*, 436 U.S. 658, 690, nn. 55, 98 (1978)).  Section 1981 claims must be brought pursuant to Section 1983. *Jett v. Dallas Independent School Dist.*, 491 U.S. 701, 735–36 (1989).  To succeed on the claim, the plaintiff ordinarily must show that a Section 1981 violation "was caused by a custom or policy" of the government entity.  *Id*.  However, a municipality may be liable for a single unconstitutional act by an official who has final policy-making authority.  *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986).

In denying Defendants' motion to dismiss Taylor's Section 1981 claim, Chief Judge Swain ruled that Taylor had failed to allege any discriminatory custom or policy by DSNY or the City; however, Chief Judge Swain liberally construed the Amended Complaint to allege that Reilly was a final policy-maker, noting the "special solicitude" afforded to *pro se* litigants.  Op. at 2 n.1, 7 n.5, 11.  Now, on summary judgment, Defendants have come forward with evidence that Reilly "did not have final policymaking authority."  Def. Mem. at 20; *see* Def. 56.1 ¶53; Reilly Decl. ¶13, Reilly Depo. at 59:6-60:12.

Taylor is no longer *pro se*, and, after counsel appeared on his behalf, the Court reopened the discovery in this case. so that Taylor could take discovery with the benefit of counsel [ECF No. 85].  However, Taylor has not offered evidence to raise a genuine dispute whether Reilly was a final policy-maker. Isolated acts of an individual City employee who is not a final policymaker do not "represent official City policy" and do not give rise to liability under Section 1981. *Littlejohn v. City of New York*, 795 F.3d 297, 315 (2d Cir. 2015).

Taylor tries a different approach. Quoting at length from a now-abrogated (and never

binding) district court decision, Taylor argues that his Section 1981 claim should proceed because the City is liable for Reilly's actions under the doctrine of *respondeat superior*.  Pl. Opp. at 13–14 (quoting *Ismail v. Cohen*, 706 F. Supp. 243, 246–48 (S.D.N.Y. 1989)).  But his lengthy quotation from *Ismail v. Cohen* at best supports *ambiguity* about whether *respondeat superior* applies to Section 1981 claims.  *Ismail*, 706 F. Supp. at 246 ("[B]oth the Supreme Court and the Second Circuit have declined to state whether the doctrine [of *respondead superior*] applies to § 1981 actions." (citing cases)).  That ambiguity has since been resolved: the Second Circuit held that *respondeat superior* "cannot be the basis of municipal defendant liability under §§ 1981 or 1983." *Littlejohn*, 795 F.3d at 315 (citing *Patterson*, 375 F.3d at 226).  Accordingly, Defendants are entitled to summary judgment on Taylor's Section 1981 claim.

## IV.   CONCLUSION

Accordingly, for the reasons stated above, Defendants' motion for summary judgment is DENIED in part and GRANTED in part.

**SO ORDERED.**

**Date:  March 31, 2023**
       **New York, NY**

**MARY KAY VYSKOCIL**
**United States District Judge**

14